## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **FRED B. LEATHERS, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action** |
| ) | |
| **vs.** ) | **File No. 1:04-CV-0615** |
| ) | **WSD** |
| ) | |
| **PFIZER INC AND WARNER-** ) | |
| **LAMBERT COMPANY LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO STRIKE

Defendants Pfizer Inc and Warner-Lambert Company LLC (collectively

"Pfizer"), pursuant to Federal Rule of Civil Procedure 37(c)(1) and Northern

District of Georgia Local Rule 26.2(C), submit this Memorandum of Law in

support of their Motion to Strike from the record:  (i) the deposition transcript of

Paul Phillips, M.D., taken in an unrelated case; and (ii) the new, and previously

undisclosed, expert opinions contained in the declarations of Edward S. Novey,

M.D., Joe B. Linker, III, M.D., and Mark R. Firth, M.D.

1

## I.   **PRELIMINARY STATEMENT**

Although the time for identifying experts has long since passed, and there is just thirty days of discovery left before the cut-off, Plaintiff now seeks to offer purported expert testimony from doctors who were never designated as experts. Plaintiff has also submitted a declaration from his sole designated expert, after receiving Pfizer's Motion to Exclude the expert's opinions, which squarely contradicts the expert's report and his deposition testimony.  Plaintiff apparently believes that he can simply ignore the Rules of this Court, and unilaterally jettison the entire case management schedule that was put in place over a year ago.  Expert designations were due long ago, depositions of the Plaintiff and his expert were taken last year, and this Court should not countenance Plaintiff's attempt to ambush Pfizer via new, previously undisclosed expert opinions offered in a last-ditch, "kitchen sink" effort to defeat Pfizer's Motion to Exclude and Motion for Summary Judgment.

In its Scheduling Order dated August 19, 2004, this Court directed Plaintiff to identify his expert witnesses by October 15, 2004.  See Agreed Order Extending Discovery Period, attached hereto as Exhibit A.  On October 15, 2004, Plaintiff filed Amended Initial Disclosures designating Dr. Mark Firth, one of Plaintiff's former treating physicians, as his sole expert on medical causation.  See

Amendment to Plaintiff's Initial Disclosures, attached hereto as Exhibit B.

Nowhere in those disclosures, or in any other subsequent Court filing,[1] did Plaintiff

indicate that he intended to proffer expert testimony from anyone other than Dr.

Firth.

      After deposing Dr. Firth, Pfizer informed Plaintiff that it intended to file a

Motion to Exclude Dr. Firth's opinions on the central issue of medical causation,

and an attendant Motion for Summary Judgment.  With discovery set to expire on

February 26, 2005, the parties agreed in late January to stay the final month of

discovery until after the Court ruled on Pfizer's motions.  The purpose of the

discovery stay was to avoid expending potentially unnecessary time and money on

the review of thousands of documents, the taking of numerous depositions, and the

preparation of discovery responses that both sides agreed had no bearing on

whether Dr. Firth's expert opinion on causation was admissible.  <u>See</u> Joint Motion

and Consent Order Granting Joint Motion to Amend Scheduling Order, attached

---

[1]    It was not until last week -- after Pfizer filed its reply brief in further support
of its Motion to Exclude indicating that it would move to strike Plaintiff's
new expert opinions under Rule 37 -- that Plaintiff attempted to designate
Drs. Novey and Linker as experts.  <u>See</u> Second Amendment to Plaintiff's
Initial Disclosures, attached hereto as Exhibit C.

hereto as Exhibit D.[2]  In addition, Pfizer agreed to accelerate its dispositive motion deadline in order to expedite the Court's ruling on these potentially dispositive issues.  The Court agreed with the parties' proposal, and entered the proposed Order, and Pfizer filed its Motions to Exclude and for Summary Judgment on March 1, 2005.

In response to Pfizer's motions, Plaintiff proffered several new purported experts, new opinions, and new theories.  First, Plaintiff submitted the deposition testimony of a Dr. Paul Phillips from an unrelated case in an effort to support his general causation theory.  Dr. Phillips was never identified as a witness in this case in any capacity, and there is no indication that he was retained as an expert, or even ever met Mr. Leathers.  Next, Plaintiff offered declarations from two former treating physicians, Drs. Edward Novey and Joe Linker, who were identified as fact witnesses, but who were never designated as experts.  These declarations purportedly support Plaintiff's general and specific causation theories, but contain only conclusory statements based on a few office appointments with Plaintiff over two years ago.  In addition, Plaintiff submits a declaration from Dr. Firth to support Plaintiff's newfound theory that he need not prove general causation in this case

---

[2]  "The remaining discovery is not directed at the issues that Pfizer intends to raise in its motion."  Joint Motion to Amend Scheduling Order at 1.

because it is generally accepted in the medical community that Lipitor can cause

persistent myalgia and myopathy that does not resolve soon after the drug is

discontinued.[3] This opinion directly contradicts Dr. Firth's previous statements in

this case, including the opinions expressed in his written report. <u>See</u> Defendants'

Reply in Further Support of their Motion for Summary Judgment at 5-10.

Plaintiff's last-minute declarations and citation to a deposition from another

unrelated case plainly do not comply with the Federal Rules of Civil Procedure or

the Local Rules of the Northern District of Georgia.  Indeed, Plaintiff essentially

acknowledged that the declarations of Drs. Novey and Linker were improper when

he filed, on April 6, 2005, a second set of amended initial disclosures that purport

to designate Drs. Novey and Linker as expert witnesses.  <u>See</u> Exhibit C.  Plaintiff

should not be permitted to designate new experts five months after the deadline for

naming such experts passed, particularly since these former treaters were well-

known to him before he commenced this lawsuit.  Accordingly, the new expert

---

[3]     Dr. Novey makes a similar statement, although he stops short of saying that
        there is any support in the medical literature, or that it is generally
        recognized that Lipitor can cause *persistent* myalgia and myopathy.  <u>See</u>
        Novey Dec., attached to Plaintiff's Opposition to Defendants' Motion to
        Exclude at Exhibit 5.  Pfizer hastens to add that the Novey and Linker
        "expert opinions" are infected with the same fatal flaw as Dr. Firth's
        opinions:  they fail to cite so much as a single authority in the medical
        literature supporting their bald assertions regarding causation.

opinions offered by Plaintiff in violation of federal and local rules and at the eleventh hour should be stricken from the record and disregarded by this Court. See Fed. R. Civ. P. 37(c)(1) and N.D. Ga. L.R. 26.2(C).

## II.    ARGUMENT AND CITATION OF AUTHORITY

Rule 26 governs the conduct of discovery in civil actions, including the procedures for disclosing expert witnesses and their opinions.  Specifically, Rule 26 requires a party:  (i) to "disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence" (Rule 26(a)(2)(A)); and (ii) to provide "a written report prepared and signed by" any witness "who is retained or specially employed to provide expert testimony in the case" (Rule 26(a)(2)(B)).  These disclosures must be made "at the times and in the sequence directed by the court."  Fed. R. Civ. P. 26(a)(2)(C).

Rule 26 is designed to avoid uncertainty, and to "guarantee[], to both parties, reciprocally equal knowledge about what the opposing expert has (and more importantly has *not*) based her opinions upon and exactly what those opinions are." Hoffman v. Caterpillar, 368 F.3d 709, 715 n.3 (7th Cir. 2004) (alteration in original); see also Jack v. Glaxo Wellcome, 239 F. Supp. 2d 1308, 1318 (N.D. Ga. 2002) ("The expert report requirement of Rule 26 serves the purpose of providing

the other party with the substance of the proposed testimony, an opportunity to analyze the expert and the methodology, and a chance to seek out its own expert."). Indeed, as the Eleventh Circuit recently admonished: "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." Cooper v. Southern Co., 390 F.3d 695, 728 (11th Cir. 2004) (citation omitted).[4]

Rule 37(c)(1) is the enforcement mechanism for the procedures set forth in Rule 26(a). Rule 37 provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1). Thus, by the express terms of Rule 37(c)(1), "[t]he sanction of exclusion applies at summary judgment as well as at trial." Baker v. Indian Prairie Cmty. Unit, No. 96C3927, 1999 U.S. Dist. LEXIS 17221, at *12 (N.D. Ill. Oct. 27, 1999) (noting that the Rule "explicitly provides that untimely

---

[4]   See also Williams v. Roberts, 202 F.R.D. 294, 296 (M.D. Ala. 2001) ("The disclosure rules seek to 'eliminate unfair surprise, avoid prejudice, and allow the opposing party to mount an appropriate response to the expert's possible testimony.'") (quoting KW Plastics v. United States Can Co., 199 F.R.D. 687, 694 (M.D. Ala. 2000)).

disclosure may not be used 'at trial, at a hearing, *or on a motion.*'") (alteration in original) (quoting Fed. R. Civ. P. 37(c)(1)).

Local Rule 26.2(C) also provides the sanction of exclusion for expert evidence not properly disclosed in discovery:

> Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.

> Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

N.D. Ga. L.R. 26.2(C). Indeed, Local Rule 26.2(C) goes further than Rule 26, expressly requiring that expert opinions be disclosed sufficiently early so that: (i) the experts can be deposed by the opposing party about their opinions; (ii) the opposing party can designate its own expert(s) on the relevant topics; and (iii) the opposing party's expert(s) can be deposed prior to the close of discovery. See id.; see also Nida v. Echols, 31 F. Supp. 2d 1358, 1377-78 (N.D. Ga. 1998).[5]

---

[5]    The Federal Rules expressly authorize courts to establish local rules, such as L.R. 26.2(C), that specifically designate the time and sequence for making expert disclosures. See Fed. R. Civ. P. 26(a)(2)(C) (stating that expert disclosures shall be made at least 90 days before the trial date "in the

Pursuant to Fed. R. Civ. P. 37(c)(1) and N.D. Ga. L.R. 26.2(C), and the applicable case law, this Court should strike the deposition transcript of Dr. Phillips, the purported expert opinions of Drs. Novey and Linker contained in their recent declarations, and the new expert opinions in the declaration of Dr. Firth, because none of these opinions were disclosed to Pfizer during discovery.

A.   <u>Plaintiff's Attempt to Slip into the Record Dr. Phillips' Deposition Transcript from an Unrelated Case Should Not Be Allowed</u>

Plaintiff's attempt to use Dr. Phillips' testimony from an unrelated case in this action is wholly improper. Plaintiff never disclosed Dr. Phillips as either a fact witness or an expert witness under Rule 26(a), and therefore Pfizer never had an opportunity to depose him in connection with *this* case. In addition, although Dr. Phillips' deposition transcript is being offered to provide expert testimony to support Plaintiff's general causation theory, Plaintiff never identified Dr. Phillips as an expert or submitted a written report detailing his opinions and their bases, as required by Rules 26(a)(2)(A) and 26(a)(2)(B). <u>See</u> Plaintiff's Memorandum of Law in Opposition to Pfizer's Motion for Summary Judgment (hereinafter "Plaintiff's Opp.") at 3-4. Accordingly, Rule 37(c)(1) and Local Rule 26.2(C) mandate the exclusion of his testimony.

---

absence of other directions from the court . . . . "); <u>see also</u> <u>Nida</u>, 31 F. Supp. 2d at 1377.

Further, Plaintiff's assertion that Dr. Phillips' deposition would be admissible pursuant to Federal Rule of Evidence 804(b)(1) is simply ludicrous.  FRE 804 requires that the declarant of an out-of-court statement be *unavailable* to testify. Plaintiff has not shown that Dr. Phillips is unavailable, i.e., that Plaintiff used "appropriate diligence" in attempting to procure Dr. Phillips' attendance.  See In re Warmus, 276 B.R. 688, 695-96 (S.D. Fla. 2002) ("The Eleventh Circuit has held that 'under FRE 804 plaintiff must show appropriate diligence in attempting to serve the witness.'") (citation omitted).  Indeed, Plaintiff has not indicated that he made *any* effort at all to secure Dr. Phillips' appearance at a deposition, and his reliance on FRE 804 is deceptive.  Accordingly, Pfizer requests that the Court strike the deposition transcript of Dr. Phillips in its entirety.

### B.    Drs. Novey and Linker Were Never Identified as Expert Witnesses

Although the opinions of Drs. Novey and Linker in their declarations concerning causation are plainly "expert" opinions, Plaintiff never provided any notice that these two former treaters would offer expert opinions in this case. Indeed, Plaintiff's Rule 26(a) disclosure, served on April 26, 2004, stated that Plaintiff did not yet know the identity of his expert witnesses under Rule 26(a)(2)(A), but identified Drs. Firth, Novey and Linker -- all treating physicians --

as *fact* witnesses under Rule 26(a)(1)(A).[6]  See Attachments A and B to Plaintiff's Initial Disclosures, attached hereto as Exhibit E.  Plaintiff subsequently amended his initial disclosures to identify Dr. Firth as his expert witness.  Plaintiff never, until a week ago, identified Drs. Novey and Linker as experts as required by Rule 26(a)(2)(A).  See Exhibit C.  Nonetheless, Plaintiff now attempts to salvage Dr. Firth's testimony with Dr. Novey's and Dr. Linker's expert testimony concerning medical causation.  See Plaintiff's Opp. at 1 ("Mr. Leathers can produce the testimony of at least three doctors to establish general causation and at least three doctors to establish specific causation.").

Plaintiff was required to disclose to Pfizer the identities of all witnesses who would offer expert testimony in this case.  See Fed. R. Civ. P. 26(a)(2)(A); N.D. Ga. L.R. 26.2(C).  Although Plaintiff identified Drs. Novey and Linker as treating physicians who would offer fact testimony, he never identified them as expert witnesses who would provide "scientific, technical, or specialized knowledge" to support his medical causation theory.  See Fed. R. Evid. 702.  This failure is not

---

[6]    To be sure, Pfizer does not dispute that Drs. Novey and Linker can testify as fact witnesses.  However, their testimony must be limited to their care and treatment of Plaintiff.  These doctors cannot be permitted to make statements that go beyond their observations of Plaintiff at the time of treatment.  See, e.g., Sowell v. Burlington N. & Santa Fe Ry. Co., No. 03-C-3923, 2004 U.S. Dist. LEXIS 24738, at *7-21 (N.D. Ill. Dec. 7, 2004); Brown v. Best Foods, 169 F.R.D. 385, 388-89 (N.D. Ala. 1996).

mere semantics; rather, it goes to the heart of the rules requiring the disclosure of expert witnesses, and it precludes Plaintiff from offering Drs. Novey and Linker as experts on medical causation.  See, e.g., Williams v. Roberts, 202 F.R.D. 294, 295 (M.D. Ala. 2001) ("Last winter's amendments to Rule 701 manifest a concern with parties evading 'the reliability requirements set forth in Rule 702 . . . through the simple expedient of proffering an expert in lay witness clothing.'") (quoting Rule 701 Advisory Committee notes (2000)).

The Seventh Circuit's decision in Musser v. Gentiva Health Services, 356 F.3d 751 (7th Cir. 2004), is directly on point.  In Musser, a medical malpractice case where, as here, expert medical testimony is essential, the defendant argued that the plaintiff could not present competent expert testimony and moved for summary judgment.  Id. at 754.  In response to the defendant's motion, the plaintiff presented the deposition testimony of the plaintiff's two treating physicians and three treating nurses.  Id.  The defendant moved to strike, alleging that, although the witnesses were identified as fact witnesses and were deposed, they were not identified as experts, and thus their expert opinion testimony should be stricken under Rule 37.  The district court agreed, striking the expert opinions and granting summary judgment.  Id. at 754-55.

In affirming the district court, the Seventh Circuit emphasized that "*all* witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A)." Id. at 756.  That is, they have to be disclosed as *expert* witnesses; it is not enough that they are disclosed as fact witnesses.  Id. at 757 ("'[D]isclosing a person as a witness and disclosing a person as an expert witness are two distinct acts.'") (quoting Dist. Ct. Op. at 14).[7]  The court admonished that the Federal Rules of Civil Procedure "demand" the "formal designation" of a witness as an expert, and explained that "[k]nowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial." Musser, 356 F.3d at 757.  It made no difference that the testimony was given by treating medical professionals:  "In sum, we agree with the district court that even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony." Id. at 758.[8]

---

[7]   See also Hamburger v. State Farm Mut. Auto. Ins., 361 F.3d 875, 882 (5th Cir. 2004) ("Unlike the expert report requirement of Rule 26(a)(2)(B), the expert designation requirement of Rule 26(a)(2)(A) applies to all testifying experts.").

[8]   See also Hamburger, 361 F.3d at 883 (affirming exclusion of expert testimony of treating physician not designated as an expert under Rule 26(a)(2)(A)); Tenney, 2004 U.S. Dist. LEXIS 24183 at *3 ("A plaintiff cannot avoid the requirements of Rule 26 by offering the opinion of plaintiff's treating physicians; Rule 26 focuses not on the status of the

Here, as in <u>Musser</u>, Plaintiff's failure to identify Drs. Novey and Linker as expert witnesses under Rule 26(a)(2)(A) is fatal. The Eleventh Circuit's decision in <u>Prieto v. Malgor</u>, 361 F.3d 1313 (11th Cir. 2004), relied upon by Plaintiff in his summary judgment opposition brief, is not to the contrary. In <u>Prieto</u>, it was undisputed that the party offering the expert testimony had disclosed the witness *as an expert*; the issue before the court was whether that expert should have provided a report under Rule 26(a)(2)(B). <u>Prieto</u>, 361 F.3d at 1318. Whether or not Drs. Novey and Linker were required to provide a written expert report is a separate issue entirely; regardless, Plaintiff was required to identify these doctors as persons who would give expert testimony under Rule 26(a)(2)(A).[9] <u>See</u> <u>Musser</u>, 356 F.3d

---

witness, but rather on the substance of the testimony."); <u>Jack</u>, 239 F. Supp. 2d at 1318 (excluding opinions of undisclosed expert).

[9] Nonetheless, Pfizer notes that numerous courts have held that where, as here, a treating physician is offered to provide opinions about medical causation, he must submit an expert report because he is being retained for the purpose of providing expert testimony in the case. <u>See, e.g.</u>, <u>Sowell</u>, 2004 U.S. Dist. LEXIS 24738 at *7-21; <u>see also</u> <u>Green v. Office of the Sheriff's Office</u>, No. 3:99CV658J21HTS, 2002 U.S. Dist. LEXIS 26485, at *16-17 (M.D. Fla. Nov. 4, 2002) ("Thus, the key to the treating physician's being excused from the report requirement is that she testify only as to observations made during the care and treatment of the party."). Indeed, even the case cited by Plaintiff on this point emphasizes that the focus is on "'the substance of the testimony,'" and that a treating physician will not be considered a specially retained expert "'[t]o the extent that the treating physician testifies only as to the care and treatment of his/her patient . . . .'" <u>Brown</u>, 169 F.R.D. at 388 (citations omitted).

at 757-58 & n.3.  Thus, this Court need not decide whether Drs. Novey and Linker were required to provide written reports in order to strike their expert testimony.  See id. at 758 n.3 ("We need not reach the disputed issue of whether an individual who serves in the capacity of 'treating physician' (or any analogous position) may nonetheless be required to submit a report under Rule 26(a)(2)(B).").[10]

Accordingly, by failing to disclose Drs. Novey and Linker as experts, Plaintiff has violated Rule 26(a) and Local Rule 26.2(C), and the expert opinion testimony of these doctors must be excluded.  Specifically, Pfizer requests that the Court strike the second and third sentences of Paragraph 6 of Dr. Novey's declaration, and the last sentence of Paragraph 4 of Dr. Linker's declaration.  See Novey Dec. at ¶ 6; Linker Dec. at ¶ 4, attached to Plaintiff's Opposition to Defendants' Motion to Exclude at Exhibit 5.

C.    The Declaration of Dr. Firth Offers Opinion Testimony that Was Never Disclosed and that Directly Contradicts His Earlier Testimony

Plaintiff was required to disclose a "complete statement of all opinions to be expressed" by his expert witness.  Fed. R. Civ. P. 26(a)(2)(B).  Nowhere in Dr.

---

[10]    See also Hamburger, 361 F.3d at 883 (stating that the court "need not reach the issue of whether [the doctor] is an expert from whom an expert report is required by Rule 26(a)(2)(B)").

Firth's report, Plaintiff's Amended Initial Disclosures, or Plaintiff's responses to Pfizer's discovery requests (or in any other document), does Plaintiff indicate that Dr. Firth would testify that it is "generally recognized within the medical community that statins can cause myalgias and myopathies, *which in some patients persist after the drug is discontinued*." Firth Dec. at ¶ 3 (emphasis added), attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment at Exhibit 1.

Putting aside the lack of support for Dr. Firth's contention,[11] it is clearly improper for Plaintiff's proffered expert to provide, in opposition to a motion for summary judgment,[12] an opinion that was never before disclosed, and is indeed contrary to his prior statements and sworn testimony in this case. At his deposition, Dr. Firth repeatedly testified that there is no medical literature or other scientific evidence showing that Lipitor can cause muscle injuries that persist long after discontinuation of the drug, and he insisted that he was unaware that muscle effects could persist after Lipitor was discontinued. See Firth Trans. at pp. 49; 82-83;

---

[11]   See Defendants' Reply in Further Support of their Motion for Summary Judgment at 11-14.

[12]   Pfizer notes that Dr. Firth's declaration is more appropriately directed to the Motion to Exclude. Nonetheless, in either context, the new opinions in his declaration are entirely improper and should be stricken from the record.

152-53; 156-57; 204; 256-57.  In fact, in his expert report, Dr. Firth stated that "much less information has been shared" with doctors regarding myopathy that "can be severe, debilitating, and persist even after the drug has been withdrawn," and that Plaintiff "has continued to suffer significant problems, *contrary to the information from the literature and drug companies*."  Firth Report at 1-2, attached hereto as Exhibit F (emphasis added).  Plainly, these statements are diametrically opposed to Dr. Firth's newfound belief that the medical community generally recognizes that statin-induced muscle injuries can persist after withdrawal of the drug.

Dr. Firth also makes two other statements in his declaration that were not previously disclosed as subjects of his expert testimony:  (1) "Many articles in the medical literature have described patients, like Mr. Leathers, who had normal CK levels and statin-induced muscle disorders"; and (2) "Exercise has been reported to increase the muscle pain associated with statin induced muscular problems."  Firth Dec. at ¶ 4-5.  Plaintiff has never indicated that Dr. Firth would provide an opinion about the capacity of statins to cause adverse muscle effects in patients with normal CK levels, or about the capacity of exercise to increase pain in patients with statin-induced muscle injuries.  To be sure, no opinion on these subjects can be found in Dr. Firth's expert report.

Rule 26(a) requires that expert reports be "'detailed and complete'" and "not be sketchy, vague or preliminary in nature." Salgado v. Gen. Motors, 150 F.3d 735, 741 n.6 (7th Cir. 1998) (quoting Fed. R. Civ. P. 26 Advisory Committee's note). For an expert report to be complete, it must include "the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor." Id. Accordingly, the courts have roundly rejected attempts to submit expert opinions at the eleventh hour that exceed the scope of, or contradict, the opinions provided in the expert's report. See, e.g., Williams v. Roberts, 202 F.R.D. 294, 296 (M.D. Ala. 2001) (excluding updated expert reports filed in response to motion to exclude that contradicted original reports); Brumely v. Pfizer, 200 F.R.D. 596, 603 (S.D. Tex. 2001) (excluding affidavit filed in response to summary judgment motion to the extent that the affidavit went beyond the opinions expressed in the expert's report); Danis v. USN Communications, 121 F. Supp. 2d 1183, 1189-90 (N.D. Ill. 2000) (refusing to consider affidavit filed in response to summary judgment motion that contradicted expert's report and previous testimony); Baker, 1999 U.S. Dist. LEXIS 17221 at *12-15 (striking portions of affidavits filed in response to summary judgment motion that contained new expert opinions); Penland v. BIC Corp., 796 F. Supp. 877, 881 (W.D.N.C. 1992) (striking

affidavits offered in opposition to summary judgment motion that "contain[ed] purported expert opinion not previously disclosed").[13]

As in the cases cited above, Dr. Firth's new opinions go well beyond, and actually contradict, the opinions provided in his expert report. Accordingly, Dr. Firth's testimony should be limited to the opinions expressed in his report, and the new and different opinions contained in his declaration should be stricken pursuant to Rule 37(c)(1). Specifically, Pfizer requests that the Court strike Paragraphs 3, 4, 5 and 6 of Dr. Firth's declaration.

### D. Plaintiff's Failure to Disclose in Discovery the Expert Opinions He Offers Now Is Neither Substantially Justified Nor Harmless

Plaintiff's failure to disclose in discovery the expert opinions he now relies upon mandates the exclusion of those opinions unless his failure was "substantially justified" or "harmless" to Pfizer. See Fed. R. Civ. P. 37(c)(1) and 1993 Amendments Advisory Committee notes thereto (calling the sanction "automatic"); Musser, 356 F.3d at 758 ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or

---

[13]    See also Cooper, 390 F.3d at 728 (affirming exclusion of expert evidence for failure to comply with Rule 26); Johnson v. Vanguard Mfg., 2002 U.S. App. LEXIS 8849, at **4-5 (3d Cir. May 8, 2002) (affirming exclusion of expert testimony not provided in expert's report); Salgado, 150 F.3d at 741 (affirming exclusion of expert testimony, and resultant grant of summary judgment, for failure to provide timely and complete expert reports).

harmless."); <u>Klonoski v. Mahlab</u>, 156 F.3d 255, 269 (1st Cir. 1998) ("[T]he new rule clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion.").[14]  Further, Plaintiff has the burden to show that his failure was substantially justified or harmless.  See <u>Musser</u>, 356 F.3d at 759; <u>Burney v. Rheem Mfg.</u>, 196 F.R.D. 659, 691 n.29 (M.D. Ala. 2000) ("Under Rule 37, the burden of establishing that non-disclosure is substantially justified or harmless is on the party who failed to disclose the information."); <u>see</u> <u>also</u> <u>Go Med. Indus. Pty. v. Inmed</u>, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003) (placing burden on non-disclosing party under Rule 37); <u>Rabello v. Bell Helicopter Textron</u>, 200 F.R.D. 484, 489 (S.D. Fla. 2001) (same).

---

[14]  <u>See</u> <u>also</u> <u>Vance v. United States of Am.</u>, 182 F.3d 920, 1999 U.S. App. LEXIS 14943, at *8-9 (6th Cir. 1999) (text available on LEXIS) (unpublished opinion) ("It is well-established that Fed. R. Civ. P. 37(c)(1), enacted in 1993, mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.") (footnotes omitted); <u>Burney v. Rheem Mfg.</u>, 196 F.R.D. 659, 691 n.29 (M.D. Ala. 2000) (same).

Plaintiff cannot show that his non-disclosure was substantially justified[15] or harmless.[16]  First, there is no justification for Plaintiff's nondisclosure.  There can be no genuine dispute that Plaintiff was required to properly disclose the expert opinions contained in the newly filed declarations, allowing Pfizer ample time to explore the basis for the experts' conclusions and to mount an appropriate response to their opinions.  Further, there is no plausible explanation for Plaintiff's failure to comply with Rule 26.  In fact, the only possible explanations for Plaintiff's actions are:  (i) he purposely withheld information concerning the experts he would rely on and the opinions they would express so that he could surprise Pfizer with these arguments at the last moment; or (ii) he concocted these arguments in the hope of defeating Pfizer's Motion to Exclude and Motion for Summary Judgment.  Of course, neither of these explanations is justifiable.

---

[15]     "'Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.  The proponent's position must have a reasonable basis in law and fact.  The test is satisfied if there exists a genuine dispute concerning compliance.'"  KW Plastics v. United States Can Co., 199 F.R.D. 687, 690 (M.D. Ala. 2000) (citation omitted).

[16]     "A discovery mistake is harmless if it is honest, and is coupled with the other party having sufficient knowledge that the material has not been produced."  Go Med. Indus., 300 F. Supp. 2d at 1308.

Likewise, Plaintiff's failure to disclose this information cannot be viewed as harmless to Pfizer.  Indeed, Plaintiff's last-minute ambush presents a classic illustration of the harm caused by non-disclosure that the sanction of Rule 37(c)(1) was intended to prevent.  As the Seventh Circuit explained in <u>Musser</u>:

> [The defendant] should not be made to assume that each witness disclosed by [the plaintiff] could be an expert witness at trial. . . . The failure to disclose experts prejudiced [the defendant] because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report.

356 F.3d at 757-58 (citation omitted).  Here, as in <u>Musser</u>, Plaintiff's non-disclosure has deprived Pfizer of the ability to depose these witnesses about their opinions, retain rebuttal experts on the new issues raised, properly mount a challenge to the substance of the new opinions, and move to exclude these opinions from evidence.  See <u>id.</u>; see also <u>Jack</u>, 239 F. Supp. 2d at 1318 (excluding the proffered expert's testimony where it was not disclosed under Rule 26(a)(2)(B) because a party offering expert testimony must give the opposing party notice

about the substance of any proposed expert's opinions, and an opportunity to analyze and challenge that testimony).[17]

In short, Plaintiff cannot be permitted to wait until after his expert report deadline has long passed, his expert has been deposed, and Pfizer has filed a Motion to Exclude and a Motion for Summary Judgment, before presenting new experts and opinions to support his case.  Plaintiff must stand or fall on the basis of the only expert opinions he properly disclosed in discovery:  the opinions contained in Dr. Firth's report.

## CONCLUSION

For the reasons set forth herein, Pfizer respectfully requests that the Court strike from the record the deposition testimony of Paul Phillips, M.D., and the specified portions of the declarations of Edward Novey, M.D., Joseph Linker, M.D., and Mark Firth, M.D., and for such other relief as this Court deems appropriate.

---

[17]    See also Williams, 202 F.R.D. at 296 ("Defendant's actions have prevented Plaintiffs from mounting an appropriate response to [the expert]'s possible testimony."); Nida, 31 F. Supp. 2d at 1378 ("[P]laintiff failed to comply with Local Rule 26.3(C) by failing to make [the expert] available to be deposed during the discovery period, so that defendants could decide whether they wished to retain a counter-expert, could have that expert prepare his expert report, and could make that expert available for deposition within the discovery period.").

Respectfully submitted this 11th day of April, 2005.


OF COUNSEL:

Barbara Wrubel
Mark S. Cheffo
Skadden, Arps, Slate,
Meagher & Flom LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000

/s/ LeeAnn Jones

V. Robert Denham, Jr.
Georgia Bar No. 217712
LeeAnn Jones
Georgia Bar No. 402440
Powell Goldstein LLP
1201 West Peachtree Street
Fourteenth Floor
Atlanta, GA 30309
Tel:  (404) 572-6600

Attorneys For Defendants Pfizer Inc and Warner-Lambert Company LLC

## <u>CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 7.1(D)</u>

Pursuant to Northern District of Georgia Local Rule 7.1(D), undersigned counsel hereby certifies that the foregoing brief has been prepared with Times New Roman 14 point font, which is one of the font and point selections approved by the court in Local Rule 5.1(B).

/s/ LeeAnn Jones
LeeAnn Jones
Georgia Bar No. 402440

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FRED B. LEATHERS, JR.,               )
                                     )
    Plaintiff,                   )        CIVIL ACTION FILE NO.
                                     )        1:04-CV-0615-WSD
    viii.                        )
                                     )
PFIZER INC and WARNER-LAMBERT        )
COMPANY LLC,                         )
                                     )
    Defendants.                  )

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANTS'

MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE

was furnished via U.S. Mail on the 11th day of April, 2005, upon the following:

    James R. Schulz, Esq.
    Ragsdale, Beals, Hooper & Seigler, LLP
    2440 International Tower
    229 Peachtree Street, N.E.
    Atlanta, Georgia  30303-1629

          /s/ LeeAnn Jones
          LeeAnn Jones
          Georgia Bar No. 402440

          Attorney for Defendant Pfizer Inc and
          Warner-Lambert Company LLC

::ODMA\PCDOCS\ATL\864735\1